# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

**UNITED STATES OF AMERICA,**                                            Criminal No. 06-0005 (JNE/JJG)

          Plaintiff,

    v.                                                                                      **REPORT AND**
                                                                                                         **RECOMMENDATION**
**HECTOR RIOS-GUZMAN,**
**a/k/a HECTOR RIOS,**

          Defendant.

---

## APPEARANCES

Erika Mozangue, Esq., Assistant United States Attorney, for Plaintiff United States of America

Stephen Walburg, Esq., for Defendant Hector Rios-Guzman

---

JEANNE J. GRAHAM, United States Magistrate Judge

        The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on February 14, 2006, on the pretrial motions of both the United States of America (the "Government") and Defendant Hector Ruis-Guzman. This matter is scheduled to be tried before the Honorable Joan N. Ericksen, United States District Court for the District of Minnesota. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

1

I.      **INTRODUCTION**

A Complaint was filed on December 13, 2005, against Defendant Hector Rios-Guzman, and a bench warrant was issued for his arrest.  Defendant had been arrested on December 12, 2005, and was ordered detained by United States Magistrate Judge Boylan.  An Indictment against the Defendant was handed down on January 10, 2006, charging the Defendant with one count of knowingly and  unlawfully being in the United States as an alien previously removed subsequent to a conviction for an aggravated felony in violation of Title 8 U.S.C. §§ 1326 (a) and (b) and Title 6 U.S.C. §§ 202(3), 202(4) and 257.

This Court held a pretrial motions hearing on February 14, 2006, at which Defendant Rios-Guzman was present and represented by counsel.  One witness testified on behalf of the Government: Special Agent Paul Nichols of the Bureau of Immigration and Customs  Enforcement, Department of Homeland Security. One witness testified on behalf of the Defendant: Ms. Georgina Lopez, identified as the Defendant's girlfriend and the mother of defendant's infant daughter.  No exhibits were entered at the hearing.

The parties requested and received permission to file post-hearing memoranda regarding Defendant's dispositive motions.  Defendant's post-hearing memorandum was due on or before February 21, 2006.  The Government's post-hearing memorandum was to be filed on or before February 28, 2006. The parties have submitted the post-hearing memoranda in a timely fashion.  The Court addresses the Defendant's dispositive motions in this Report and Recommendation.  The parties's non-dispositive motions are addressed in a separate Order.

II.     **RELEVANT FACTS**

The Bureau of Immigration and Customs  Enforcement within the Department of Homeland Security utilizes a "tip-line" to allow members of the public to leave information concerning customs and

immigration issues.  According to Agent Nichols, several calls were left on the tip-line indicating that a Hector Rios-Guzman was a member of a gang who was living with his girlfriend at an apartment on Freemont Avenue South in Bloomington, Minnesota.  The "tipster" identified Georgina Lopez as Hector Rios-Guzman's girlfriend.

After receiving the information on the tip-line, further investigation indicated that Hector Rios-Guzman is a citizen of Mexico who had been previously deported from the United States after a conviction for Terroristic Threats.  Because of this prior conviction, Mr. Rios-Guzman is not permitted to return to the United States without permission.

Pursuant to the information obtained from the tipster and the ensuing investigation, Agent Nichols conducted surveillance of the apartment complex on Freemont Avenue South.  During this surveillance, Hector Rios-Guzman was not seen entering or leaving the apartment.  Agent Nichols did observe the name "Georgina Lopez" listed on one of the mailboxes inside the apartment building.  Based upon the information received from the tipster, from the subsequent investigation and from the input from the United States Attorney General's office, Agent Nichols decided to make a probable cause arrest instead of obtaining an arrest warrant for the defendant.

According to the testimony of Agent Nichols, on December 12, 2005, he and three other agents went to the apartment listed on the mailbox of Ms. Lopez at the apartment building on Freemont Avenue South in an effort to locate and arrest Hector Rios-Guzman.  The agents arrived at the apartment at approximately 7:00 a.m.  Each of the agents wore a body armor vest clearly bearing the word "Police" and each wore a badge around his neck.  All of the agents were armed.

Agent Nichols knocked on the apartment door.  According to the hearing testimony of Agent Nichols, the following events occurred after he knocked on the apartment door.  A female voice asked through the closed door "who is it?"  Agent Nichols responded through the closed door "police."  The door then opened and a female, later identified as Georgina Lopez, appeared.  Agent Nichols then stated that the agents were looking for Hector Rios-Guzman, and asked if the officers could "come in."  Ms. Lopez answered "yes," and moved back and to the side so the agents could enter the apartment.  After the agents entered the apartment, Ms. Lopez told the agents that the defendant was "sleeping."  Agent Nichols and one other agent walked across the living room into a small hallway and to the bedroom door where Agent Nichols drew his weapon.  Agent Nichols opened the bedroom door and found the defendant, Hector Rios-Guzman, asleep in the bedroom with an infant child.  Mr. Rios-Guzman was placed under arrest. According to Agent Nichols, Ms. Lopez never verbalized any objections to his going to the bedroom.

Ms. Lopez testified that she opened the apartment door after Agent Nichols indicated it was the police because she "didn't think anything was wrong."  Ms. Lopez testified that she recognized the men as police officers when she saw their uniforms, and that she saw the agents with their guns drawn.  Ms. Lopez testified that she told Agent Nichols the agents could come into the apartment, and that she told Agent Nichols the defendant was sleeping.[1]  Ms. Lopez testified that the only thing she said to the officers

---

[1] Georgina Lopez gave inconsistent testimony at the hearing about the sequence of her communications with Agent Nichols.  On direct examination, Ms. Lopez testified that she told Agent Nichols the defendant was sleeping immediately after Agent Nichols told her the agents were looking for Hector Rios-Guzman and before he asked if the officers could come in.  On cross-examination, Ms. Lopez indicated that she told Nichols the defendant was sleeping after Agent Nichols and the other officers had entered the apartment.  The Court credits the testimony of Agent Nichols in light of the conflicting testimony given by Ms. Lopez.

once the defendant had been arrested was a request that the officers not make noise that could awaken her infant daughter.

According to Agent Nichols, he spoke to Ms. Lopez later that same morning by telephone and answered several questions that she had.  Agent Nichols testified that he had no difficulty communicating with Ms. Lopez, and he found nothing unusual about her demeanor during the call.  Agent Nichols stated that at no time during this telephone conversation did Ms. Lopez state any objections to the agents' entry into her apartment or the subsequent arrest of the defendant earlier that morning.  Ms. Lopez did not dispute Agent Nichols testimony that she never voiced any objections to the officers about their entry into the apartment or the bedroom, but testified that her invitation to the officers to come into the apartment that morning was intended to allow them only to enter the outer door, not to come into the apartment itself.  Ms, Lopez testified that she was not asked about and did not give her consent to the agents to conduct a search of the apartment.

## III.    DISCUSSION

### A.    Defendant's Motion to Suppress Evidence as a Result of Search and Seizure

Defendant Rios-Guzman moves the Court pursuant to Federal Rule of Criminal Procedure 12 for the suppression of any physical evidence obtained as the result of a search and seizure.  The Defendant claims that any searches and seizures were conducted without warrant, without probable cause and were lacking in exigent circumstances.  Defendant further claims that any consent to search given was invalid as coerced or beyond the apparent authority of the person giving consent.

1.      Probable Cause

Defendant Rios-Guzman first argues that on December 12, 2005, the police did not have probable cause to enter his home to effect an arrest. To determine the existence of probable cause, the Court looks at the totality of the circumstances. Illinois v. Gates, 462 U.S. 462 U.S 213, 230-39 (1983); United States v. Kelly, 329 F.3d 624, 628 (8th Cir.2003). Probable cause will be found to have existed where the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe than an offense was being or had been committed by the person to be arrested. Kleinholz v. U.S., 339 F.3d 674, 678 (8th Cir.2003).

According to the record in this case, at the time the officers in this case approached the apartment on Freemont Avenue South, they knew the following: an anonymous tipster had made several calls to a public tip-line stating a Hector Rios-Guzman was working construction and living at an apartment located on Freemont Avenue South in Minneapolis, Minnesota, that Hector Rios-Guzman was a gang member and that Hector Guzman's girlfriend's name was Georgina Lopez; surveillance by law enforcement had identified a mailbox with the name "Georgina Lopez" in an apartment building on Freemont Avenue South; investigation by law enforcement officers had indicated that Hector Rios-Guzman was a citizen of Mexico who had been previously deported following a terroristic threats conviction in Hennepin County, Minnesota; and that because of this conviction and deportation, Hector Rios-Guzman cannot legally re-enter the United States without permission.

The Court finds that the cumulative effect of this information provides sufficient basis for a person of reasonable caution to believe that Hector Rios-Guzman violated Federal Law and that he could be found in the Freemont Avenue apartment identified on the mailbox as occupied a Georgina Lopez in violation of

the law.  Accordingly, the Court finds the cumulative effect of this information provides sufficient basis for a finding of probable cause.  United States v. Tyler, 238 F.3d 1036, 1038 (8th Cir.2001) (stating that in the assessment of probable cause, "we do not evaluate each piece of information independently; rather, we consider all of these facts for their cumulative meaning").

> 2.    Warrantless Entry Into the Apartment

Defendant Rios-Guzman next argues that because the agents lacked exigent circumstances, their entry into the apartment without a warrant was improper.  The Court finds the Defendant's argument is without merit.  The Fourth Amendment prohibits warrantless and nonconsensual entries into a suspect's home to make a routine felony arrest.  Payton v. New York, 445 U.S. 573, 576 (1980).  However, the Eight Circuit has expressly held that where law enforcement officers have obtained valid and consensual entry into a home, a subsequent warrantless arrest is permissible.  United States v. Briley, 726 F.2d 1301, 1303 (8th Cir.1984)

The test for determining whether consent is valid is whether the consent is given voluntarily and without coercion.  Id. at 1304 (citing United States v. Dennis, 625 F.2d 782, 793 (8th Cir.1980)).  This is a question of fact to be determined by all the circumstances.  Id. (citing Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)).  The burden is on the Government to show that consent was freely given.  Bumper v. North Carolina, 391 U.S. 543, 548 (1968).  It is well established that a third-party may consent as long as the third party had common authority over the premises.  United States v. Matlock, 415 U.S. 164, 171 (1974).  Common authority has been defined as "mutual use of the property by persons generally having joint access or control for most purposes…."  Matlock, 415 U.S. at 171 n.7.  The evidence indicates that both the Defendant and Ms. Lopez resided in the Freemont Avenue South apartment on December 12,

2005.  Accordingly, either person had authority to consent to the agent's entry.  U.S. v. Jones, 193 F.3d

948, 950 (8th Cir.1999) ( It is well established that an adult co-occupant of a residence may consent to a

search)(citations omitted).  The Court thus  turns to the question of whether the consent to enter the

apartment given by Ms. Lopez was given voluntarily and without coercion.

The factual record indicates that four agents, armed and wearing body armor identifying the men

as police officers, went to the apartment where Agent Nichols knocked on the  door.  In response to the

knock, Ms. Lopez did not immediately open the door.  Instead, Ms. Lopez first inquired though the door

as to who was knocking.  In response, Agent Nichols stated it was the "police."  Ms. Lopez then opened

the door to the apartment.  Still standing outside the door, Agent Nichols again stated "police," and told

Ms. Lopez they were looking for Hector Rios-Guzman.  Agent Nichol the asked Ms. Lopez if the agents

could come in, to which Ms. Lopez responded "yes," and moved to the side and backwards to allow the

agents entry through the door.  The Court credits Agent Nichols' testimony that he did not have his weapon

drawn during this exchange with Ms. Lopez, and that while all four agents bore weapons, he did not believe

the other agents had their weapons pointed at Ms. Lopez at this time.

The record contains no evidence that the agents misrepresented who they were to Ms. Lopez, or

misrepresented the purpose of their presence at the apartment.  See Briley, 726 F.2d at 1304 (stating that

a "misrepresentation may even invalidate … consent  if the consent  was given in reliance to the officer's

deceit.").  The agents did not misrepresent the fact that they did not have a search or arrest warrant.  See

Bumper, 391 U.S. at 391 (false claim of lawful authority may invalidate consent).  Nor did the agents

threaten to obtain a search or arrest warrant if consent was not given by Ms. Lopez.  See Briley, 726 F.2d

1305 (citing United States v. Boukater, 409 F.2d 537, 538 (5th Cir. 1969).  Moreover, the is no evidence

8

in the record that Ms. Lopez lacked the maturity, sophistication or intelligence to give an effective consent. Id. (citing United States v. Mayes, 552 F.2d 729, 732 (6th Cir. 1977).   An examination of the totality of the circumstance leads the Court to conclude that the Government has demonstrated that Ms Lopez's consent to enter the apartment was voluntary and was not the result of coercion.   Because the Court finds the Defendant's arrest was supported by probable cause and that the agent obtained valid and consensual entry into the Defendant's home, the Court finds the Defendant's warrantless arrest was permissible and not improper.

　　　　　　　　　　3.　　　Warrantless Search Once Inside the Apartment

Defendant Guzman next argues that Ms. Lopez only intended to invite the agents to come through the outer door of the apartment, and that she never gave permission to the agents to go through the apartment to look for Mr. Rios-Guzman.   The Defendant further asserts that the agents went into the bedroom without a valid warrant and without the permission of Ms. Lopez.   The Government claims that through her words, gestures and conduct, Ms. Lopez voluntarily gave both express and implied consent to the agents to enter into the apartment and then the bedroom for the purpose of locating Mr. Rios-Guzman.

The Court's analysis regarding the legality of the agents' search is very similar to the examination of the agents' warrantless entry into Defendant's apartment.   The Fourth Amendment prohibits the warrantless search of a suspect's person, vehicle, home or business.   The prohibition does not apply, however, to situations in which voluntary consent has been obtained from the individual whose property is searched.   Illinois v. Rodriguez, 497 U.S 177 (1990).   Police officers may search an area, even without probable cause or a warrant, if someone with adequate authority has consented to the search; however,

prosecutors must demonstrate voluntariness of the consent by the preponderance of the evidence.  United

States v. Miller, 20 F.3d. 926, 930 (8th Cir.1994).

One's consent to a search is voluntary if it results from "an essentially free and unconstrained

choice" rather than from "duress or coercion."  United States v. Galvan-Muro, 953 F.2d 1098, 1101 (8th

cir. 1992).  Whether consent is voluntary depends on the totality of the circumstances.  Schneckloth, 412

U.S. at 227.  The Eight Circuit has held that the Court is to pay particular attention to the characteristics

of the person giving consent and to the encounter from which consent arose when evaluating the

circumstances of the voluntariness of consent.  United States v. Thomas, 93 F.3d 479, 486 (8th Cir.1996)

(citing United States v. Chaidez, 906 F.2d 377, 381 (8th Cir.1990)).

Moreover, because the Fourth Amendment protects against unreasonable searches, a search is not

unconstitutional as long as the officers reasonably believed that consent was voluntarily given.  See e.g.,

Rodriguez, 497 U.S. at 185-86.  The Eight Circuit has held that explicit verbal consent is not necessary

and that "a person can render a search legal by behaving in a way that would cause a reasonable person

to believe that he or she has knowingly and voluntarily consented, whether or not the person actually

intends to consent" United States v. Lopez-Rodriguez, 396 F.3d 956, 959 (8th Cir.2005); United States

v. Gleason, 25 F.3d 605, 607 (8th Cir.), cert. denied, 513 U.S. 911 (1994) (Consent may be inferred

through words, actions or conduct of the individual subject to the search).  From these principles, it is clear

that the Government must prove that Ms. Lopez consented to the search of the bedroom or that the agents

reasonably so believed.  United States v. Cedano-Medina, 366 F.3d 682, 684 (8th Cir. 2004).

The Court concludes that the Government has met its burden of proof.  Ms. Lopez testified that

she is 21 years old.  Agent Nichols testified that Ms. Lopez appeared to understand the questions posed

to her and the record indicates that she made appropriate responses.  Ms. Lopez testified that she opened the door to the apartment after learning it was the police because she "didn't think anything was wrong." Ms. Lopez further testified that she saw the officers had their guns drawn when she opened the door, a fact disputed by Agent Nichols, but she nonetheless invited the agents to come into her apartment upon their request with a single response of "Yes."  Both Agent Nichols and Ms. Lopez testified that Agent Nichols told Ms. Lopez that the officers were looking for Hector Rios-Guzman *before* Agent Nichols asked "can we come in?"  The Court finds no evidence of coercion or distress in any these circumstances.  These fact support a finding that Ms. Lopez was capable of giving knowing and voluntary consent to the agents.

Moreover, while Ms. Lopez indicated during her testimony at the hearing that she did not intend to give the officers consent to come into to the apartment to look for the Defendant, but only meant for them to enter the outer door, the evidence of her actions on December 12, 2005, does not support her claims regarding these un-spoken intentions.  First, Ms. Lopez invited the agents into the apartment *after* learning that they were looking for the Hector Rios-Guzman.  Once the agents were inside the apartment, Ms. Lopez volunteered to the agents that Hector Guzman was sleeping.  When Agent Nichols crossed the living room into the hall and went to the bedroom door, Ms. Lopez did not object or make any indication that the officers should wait, stop or leave.  According to the undisputed record, the only thing Ms. Lopez said to the agents during their arrest of the Defendant in the bedroom was a request not to make noise that would wake her infant daughter who was asleep in the bedroom where the agents located the Defendant.

From the totality of these circumstances, the Court finds that was reasonable for the agents to construe this sequence of words and actions by Ms. Lopez as her voluntary consent to enter the apartment to locate Hector Rios-Guzman and then to go into the bedroom where Ms. Lopez had indicated he was

11

sleeping. Lopez-Rodriguez, 396 F.3d at 959 (Eighth Circuit held that by allowing law enforcement officials to enter and never asking them to leave or to stop searching, a person has thereby expressed what a reasonable person would believe is consent); Cedano-Medina, 366 F.3d at 686 (finding officer's belief that consent was given to be reasonable where defendant opened the door of his truck, stood back along the side of the truck, and never attempted to stop the search).

Finally, whatever Ms. Lopez's subjective intent might have been when she invited the officers into the apartment and told them Hector Rios-Guzman was sleeping, the standard for measuring the scope of a person's consent is that of "objective reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Rodriguez, 497 U.S. at 251. Thus, the question is whether it is reasonable for Agent Nichols to consider Ms. Lopez's invitation into the home and indication that the Defendant was sleeping, to be consent to go into the bedroom to look for Mr. Rios-Guzman. Based upon the circumstances described in the record and summarized herein, the Court answers this question affirmatively. Agent Nichols reasonably could have understood the invitation into the apartment followed by the unsolicited information from Ms. Lopez that the Defendant was sleeping, to mean that Ms. Lopez was indicating that Agent Nichols could go look for the Defendant in the bedroom. Accordingly, even if the search was found to be invalid as a matter of law, a finding this Court is not making here, the search into the bedroom was permissible because the agents reasonably believed they had consent to conduct the search, and that belief was objectively reasonable in light of all the circumstances. See United States v. Chaviano, 32 F.3d 1330, 1335-36 (8th Cir.1994).

In consideration of the totality of all the circumstances surrounding the agent's entry into the Defendant's apartment and his subsequent arrest in the bedroom, the Court concludes that the Government

has met its burden of proving that the agents obtained valid and voluntary consent from Ms. Lopez to enter the apartment and to look for the Defendant in the bedroom. Accordingly, the Court finds no evidence of violations of the Defendant's Fourth Amendment rights, and recommends the Defendant's Motion to Suppress Evidence be denied.

**B.     Defendant's Motion to Suppress Statements**

Defendant Rios-Guzman moves this Court to suppress all statements made by the defendant stating that such statements were obtained without the benefit of counsel, in violation of his Constitutional rights, or that such statements were not voluntarily given. At the pretrial motions hearing, the Government represented to the Court that there are no such statements, and that the Government, therefore, will not be offered any such evidence at the trial of this matter. Based upon the representations of the Government, the Court recommends Defendant's motion be denied as moot.

**IV.     CONCLUSION**

Based upon the parties' submissions to the Court, the hearing testimony, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.     Defendant's Motion to Suppress Statements (Doc. No. 19) be **DENIED AS MOOT**, based upon the Government's representation that there are no such statements in this case; and

2.    Defendant's Motion to Suppress Evidence as a Result of Searches and Seizures

(Doc. No. 21) be **DENIED**.

Dated: March 13, 2006                                    s/Jeanne J. Graham

_____

JEANNE J. GRAHAM
United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by March 31, 2006.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.